IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:18-CV-597-BO

| | |
|---|---|
| BUYER'S DIRECT INC., <br>     Plaintiff, <br><br> v. <br><br> DICK'S SPORTING GOODS, INC., <br> HIBBETT SPORTING GOODS, INC., <br> ACADEMY LTD., IMPLUS FOOTCARE, <br> LLC, and unknown retailers who purchase <br> infringing products from IMPLUS <br> FOOTCARE, LLC, <br>     Defendants. | O R D E R |

   This cause comes before the Court on a motion by defendants Dick's Sporting Goods, Hibbett Sporting Goods, Academy, and Implus Footcare for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. Plaintiff has responded, defendants have replied, and a hearing on the matter was held before the undersigned on September 16, 2019, at Raleigh, North Carolina. In this posture, the motion is ripe for ruling and, for the reasons that follow, the motion for judgment on the pleadings is granted.

## BACKGOUND

   In its amended complaint, plaintiff alleges claims for direct infringement of its U.S. Design Patent No. D598,183, (the '183 patent) which was issued on August 18, 2009, and of which plaintiff is now the owner. That patent in issue contains a single claim for the ornamental design for a slipper and contains eight drawings. [DE 1-1; 1-2]. Plaintiff has retained the exclusive right to manufacture all commercial embodiments of the '183 patent. Plaintiff sells the commercial embodiment of its '183 patent under the trademark SNOOZIES!.

Plaintiff alleges that defendants directly infringe the '183 patent by manufacturing, using, importing, offering for sale, and/or selling foot covers trademarked as SOFSOLE FIRESIDE and COZY CABIN. 35 U.S.C. § 271. Plaintiff has further alleged claims for trade dress infringement, unfair competition under the Lanham Act, and unfair competition under North Carolina law. The defendants request entry of judgment on the pleadings in their favor on plaintiff's claims for patent infringement only.

## DISCUSSION

A motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) allows for a party to move for entry of judgment after the close of the pleadings stage, but early enough so as not to delay trial. Fed. R. Civ. P. 12(c). Courts apply the Rule 12(b)(6) standard when reviewing a motion under Rule 12(c). *Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 375 (4th Cir. 2012). Accordingly, the Court considers the facts as alleged as true and construes all inferences in plaintiff's favor. *Burbach Broad. Co. of Delaware v. Elkins Radio Corp.*, 278 F.3d 401, 406 (4th Cir. 2002). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

A design patent protects only "the novel, ornamental features of the patented design." *OddzOn Prod., Inc. v. Just Toys, Inc.*, 122 F.3d 1396, 1405 (Fed. Cir. 1997). The patent holder must prove design patent infringement by a preponderance of the evidence. *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed Cir. 2008) (en banc). A court engages in a two-step process to determine whether a design patent has been infringed. First, if appropriate, the court

construes the claim; second, the accused design is compared to the allegedly infringed design patent. *OddzOn*, 122 F.3d at 1405. This comparison, referred to as the ordinary observer test, asks if

> in the eye of an ordinary observer, giving such attention as a purchaser usually gives, two designs are substantially the same, if the resemblance is such as to deceive such an observer, inducing him to purchase one supposing it to be the other, the first one patented is infringed by the other.

*Egyptian Goddess*, 543 F.3d at 670; *see also Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010).

In evaluating whether infringement has occurred, "[i]t is the appearance of a design as a whole which is controlling." *OddzOn*, 122 F.3d at 1405. "Where the claimed and accused designs are 'sufficiently distinct' and 'plainly dissimilar,' the patentee fails to meet its burden of proving infringement as a matter of law." *Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1335 (Fed. Cir. 2015). Design patents are limited to what is contained in the application drawings, *In re Mann*, 861 F.2d 1581, 1582 (Fed. Cir. 1988), and the claim language can serve to limit the scope of a design patent. *Curver Luxembourg, SARL v. Home Expressions Inc.*, 938 F.3d 1334, 1340 (Fed. Cir. 2019).

In determining whether the accused SOFSOLE FIRESIDE and COZY CABIN foot coverings are plainly dissimilar or sufficiently distinct, the Court has considered the pleadings and the photographs of the foot coverings included therein in order to conduct a side-by-side comparison of plaintiff's '183 patent and the accused foot coverings. The Court has also considered the photographs of the bottom of the accused foot coverings submitted by defendants as they are necessary to conduct a complete similarity analysis.[1] *See Philips v. Pitt Cnty. Mem'l*

---

[1] The Court need not determine whether consideration of defendants' images of the accused product draped over dowels would convert the instant motion to one for summary judgment as it has not considered them in deciding the instant motion.

*Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009). The Court is further guided, though not bound, by the Federal Circuit's discussion of the '183 patent contained in *High Point Design LLC v. Buyer's Direct, Inc.*, 621 F. App'x 632, 633 (Fed. Cir. 2015). In *High Point*, the Federal Circuit determined that another allegedly infringing foot covering, the "Fuzzy Babba," did not infringe the '183 patent. *Id.* at 641-42.

The '183 patent states it is of the ornamental design for a slipper. [DE 1-1]. Eight drawings describing the slipper are included, with a perspective view (figure one), front and rear elevational view (figures two and three, respectively), left and right side elevational view (figures four and five), a top and bottom plan view (figures six and seven), and another bottom plan view (figure eight). *Id.* Each image depicts a structured slipper with a defined opening; fuzzy, fleece-appearing lining the inside of the slipper as well as around the opening; a distinctly visible sole; and, in figure seven, a uniform, tight grid pattern of dots which appear on the sole, with a smaller section of dots located at roughly the ball of the foot and a larger section of dots located between the arch of the foot and the heel. There is a second embodiment pictured in figure eight showing a smooth sole with no dots.

By comparison, the accused foot coverings, referred to by defendants as slipper socks, appear softer, less rigid, and flatter than the '183 design patent. The accused slipper socks clearly have no sole, and thus appear more like a sock than like a slipper. The accused slipper socks and the '183 design patent share the fuzzy fleece lining that is visible at the foot opening. However, the images of the accused slipper socks show appreciably more fuzzy fleece at the foot opening than do the '183 patent drawings. Further, the shape of the foot openings are different: the '183 design patent contains an oval or rounded opening that appears to be more rigid, while the accused slipper socks have a v-shaped opening that appears softer and more flexible. Finally, the bottom

of the '183 design patent and the accused slipper socks differ. The accused foot coverings have far fewer dots which cover close to the entirety of the bottom of the slipper sock with wide spaces between each dot. The bottoms of the accused foot covers are quite distinct from the tight, grid pattern across two sections of the sole depicted in the '183 patent. The accused foot coverings also differ from the embodiment depicted in figure eight which has a smooth sole with no dots, as each of the accused foot coverings has dots on the bottom.

Recognizing that "both designs essentially consist of a slipper with a fuzzy portion extending upward out of the foot opening," "the patented and accused designs bring to mind different impressions." *High Point Design* 621 F. App'x at 641-42. The Court thus concludes that the overall presentation of the accused foot coverings and the '183 patent are sufficiently distinct such that an ordinary observer would not confuse them.

## CONCLUSION

Accordingly, for the foregoing reasons, defendants' motion for partial judgment on the pleadings [DE 49] is GRANTED. Defendants are entitled to judgment in their favor on claims one through five of the amended complaint. The case will proceed as to plaintiff's remaining claims.

SO ORDERED, this **23** day of October, 2019.

*Terrence W. Boyle*
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE

5